WILLIAM L. McEWEN *et al.*, Plaintiff in Error, *v.* CITY OF PORTLAND, Defendant in Error.

## *Error to Multnomah.*

1. A. brought suit against B. to recover possession of real property; A. claiming title by donation from the proprietors of the city of Portland in 1849, about eight years before the commencement of this action;—*Held*, that it was error to admit evidence of *reputation* to support such title.
2. Rule, admitting hearsay evidence or repute, stated and commented upon.

THE city of Portland brought suit under the statute "for the recovery of the possession of real property," against the plaintiffs in error. The complaint of the plaintiff, in the court below, set out " that the said city of Portland is the owner of, and entitled to the possession of that certain lot of land, together with the building thereon, and other appurtenances thereunto belonging, &c.," (particularly describing the premises.) The plaintiff claimed and alleged " that the said city of Portland hath, in its own right, a good and complete *estate in fee simple* in said lot of land, and that the said city was seized and possessed of the said lot, with the tenements and appurtenances, within twenty years now last past, by actual and rightful use, occupation and enjoyment of the same, and ought now to be in the quiet possession of the same."

To this the defendants below answered, denying "that the city of Portland is the owner of the property described," &c., traversing generally the material allegations of the complaint. The defendants, after denying any wrongful entry, or withholding of the property, set up title in fee simple in themselves, and alleged " that they were in actual possession, &c., in their own right." There was a replication and denial of the title of the defendants, a trial and verdict for the plaintiff below, and judgment upon the verdict. Upon the trial, some fifteen special instructions were asked of the court, to be given

to the jury. Some were given and some refused. As no one of these points is reviewed, it is not necessary to set them out.

*Williams & Page*, for plaintiff in error.

*D. W. Douthitt*, for defendant in error.

STRATTON, J. This is a proceeding under title I. of an act to regulate actions relating to real property; and section first provides, " that any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action," &c. This statute was intended to simplify the forms of actions affecting interests in real property, but not to change the rules of evidence in such proceedings.

Section four provides, that the claimant shall not only state that he is entitled to the possession of the property, but shall set out also what interest he claims therein. Accordingly, in the case before us, the plaintiff claimed a fee simple, and the right of immediate possession.

In the argument much was said, and many authorities cited to the point, whether the corporation of the city of Portland could hold land in trust for religious and school purposes. As the verdict must be set aside on another ground, it is not deemed advisable to pass upon that question. The form of action admits the possession of the defendants, which possessory title must prevail until the complainants show a better one. " The law will never construe a possession *tortious*, unless from necessity. On the other hand, it will consider every possession lawful, the commencement or continuation of which is not proven to be wrongful. And this, on the plain principle, that every man shall be presumed to act in obedience to his duty until the contrary appears. When, therefore, a naked possession is in proof, unaccompanied by evidence as to its origin, it will be deemed lawful and co-extensive with the right set up by the party." (*Ricard* v. *Williams*, 7 *Wheaton*, 59.)

Again, it is a familiar principle of law, applicable to the present and like cases, that the claimant must prevail upon the strength of his own title, and not upon the weakness of his adversary's, unless it should appear that the defendant was a mere naked intruder, or sets up no title in himself. (*Christy* v. *Scott,* 14 *How.* 282 ; *Jackson* v. *Boston and Worcester Rail-Road,* 1 *Cushing,* 575.)

The bill of exceptions briefly states the evidence offered by both parties on the trial, but in very general terms. It was not pretended in the argument, nor does the record intimate, that the plaintiff derived title through the ordinary forms of written instruments, but it is said that the original proprietors of Portland donated the lot in question to the citizens of the then town, who erected thereon a house for school and church purposes.

It appears, from the evidence, that this donation was made, if made at all, in 1849, by the proprietors of the town. To support this donation, there was some showing that the donors set apart and designated the lot on a plot of the town. The time when, and by whom this was done, was, certainly, not very clear. Evidence was also offered on the part of the plaintiff, to which the defendants excepted, and admitted by the court, to show that, by public repute, the title to the property was in the plaintiff, and that the city was entitled to the immediate possession. As it is impossible for this court to determine what weight might have been given to this testimony by the jury, if its admission is not reconcilable with well-settled rules of evidence, the judgment must be reversed.

We are of the opinion, that the ruling of the court, in admitting this testimony, is without precedent, and not within any recognised rule of evidence. It is unfortunate that the term "*reputation,*" either from long usage or continual necessity, has been, and continues to be, applied to testimony radically different in its character. Reputation, applied to an individual whose character in the community is in question, is established by witnesses who can speak directly as to what they have seen, known, and heard to exist at the moment of

testifying. It is a present fact, evidenced by the concurrent opinion of a certain number of individuals. Such testimony is direct and original, and, in no sense, *hearsay*. Reputation, as applied to questions of pedigree, customs, boundaries, &c., is hearsay evidence, and its admission, in such cases, is said to be an exception to a general rule, as old as the rule itself. The exceptions spring from an obvious necessity, for the exceptions themselves point to a time of which no living witness could speak. Hence, in such cases, recourse must be had to the knowledge and declarations of persons long since dead, who are shown to have been acquainted with the facts about which they spoke. The *antiquity* of the subject-matter to be proved, is the essential element to let in reputation as evidence. (1*st Greenleaf Ev. sec.* 130 ; 1*st Starkie Ev. sec.* 29, 30 ; 7 *Peters*, 554.)

Had this fact occurred to the mind of the court below, as a guide in making a proper application of the rule, no such mistake would probably have occurred. Formerly, in controversies of this character, a practice prevailed, though now relaxed, requiring the claimant to allege and show acts of enjoyment within a period of living memory, before reputation could be let in as proof; thus indicating that the origin or foundation of the right was at a period antecedent to such time. The pleader, who drew the complaint in the record, must have been aware of the rule, for the allegation is distinctly made, but how is it supported by the proof ?

It appears from the evidence, recited in the bill of exceptions, that the plaintiff claims title under a donation from the proprietors of the city of Portland town site, no more remote than 1849. If we have rightly apprehended the only circumstances under which reputation, as evidence, can be admitted to prove any right or privilege, how is it proposed to bring this case within the letter or reason of the rule ? In the natural course of human life, three-fourths of the witnesses of a transaction of that date must be still living. Where are they, and why not called to speak of the fact of a conveyance in fee to the plaintiff, if such conveyance was ever made ? If

the exceptions to the rule rejecting hearsay evidence were to be enlarged to an extent to cover the present case, titles might be made and unmade with startling facility.

At best, hearsay evidence is weak and unsatisfactory, and always presumes better evidence, at some remote period to have existed, but no longer available from lapse of time. A few isolated and hard cases have demanded, and the courts long since yielded, to an extent which has made the exceptions as clear and well defined as the rule itself. Ought they now to be enlarged? An eminent judge has said, " that all questions upon the rules of evidence are of vast importance to all orders and degrees of men ; our lives, our liberties, our property, are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered for their antiquity and the good sense in which they are founded." No one rule of evidence has been more uniformly guarded by all the courts, nor with greater strictness, than that admitting hearsay evidence. In the carefully considered case of *Mima Queen* v. *Hepburn,* 7 *Cranch's R.* 290, which was a suit brought for the freedom of the plaintiff, the court refused to extend the rule to the admission of testimony, showing by reputation, or by declarations of persons since dead, that the ancestor of the plaintiff was a free person. The highest court of appeals of Maryland had, in a like case, admitted the testimony as in favor of human freedom, and the point was pressed upon the federal Supreme Court with much earnestness. A stronger case could not have been put, and so the court admitted ; but the evidence was rejected, Marshall, C. J., remarking, " the general rule comprehends the case, and the case is not within any exception heretofore recognised. This court is not inclined to extend the exceptions further than they have already been carried." The same point came under consideration again in the case of *John Davis* v. *Wood,* 1 *Wheaton's R.* 6, and the court, after stating that the opinion in *Mima Queen* v. *Hepburn* had been revived, firmly adhered to that decision.

To this point, we have examined the question solely upon

McEwen *v.* City of Portland.

the ground of the admissibility of the testimony, with reference to the time when the right or title had its origin, keeping out of view another important distinction which has arisen in most of the cases involving similar principles to the one before us. Let it be supposed, that the case comprehended the essential ingredient of antiquity, two other questions would at once arise. First, was the matter in controversy of such public and general concern as to bring it within the rule stated by Lord Kenyon, that " evidence of reputation upon general points is receivable, because all mankind, being interested therein, it is natural to suppose that they may be conversant with the subject, and that they should discourse together about them, having all the same means of information." And he immediately puts the question : " How can this apply to private titles, either with regard to particular cases or private prescription ?" (1 *Starkie's Ev.* 33 ; 1 *Greenleaf's Ev. sec.* 137.) If it were strictly necessary to settle the point, it might be doubtful whether the inhabitants of the city of Portland formed a body of such quasi-public character as to admit this evidence ; but, second, it is well settled that reputation is not admissible to prove a particular fact. The reason is obvious. Particular facts, not of a public nature, may, and in the nature of things must, be understood by few, and liable to be misrepresented or misunderstood, and may have been connected with other facts by which their effects would be limited and explained. The city of Portland sets up a title in fee simple, and such a title to a specific piece of property imports a conveyance through some of the forms known to the law. That would seem to be a distinct and isolated fact, which reputation was admitted to prove upon the trial. We think it was clearly transcending the rule. Justice Story has very comprehensively summed up the law on this subject, thus :

" 1st. That the fact, to which the reputation or tradition applies, must be of a public nature.

" 2d. If the reputation or tradition relates to the exercise of a right or privilege, it must be supported by acts

of enjoyment or privilege within the period of living memory.

" 3d. That it must not be reputation or traditionary declarations to a particular fact."    (1 *Greenleaf's Ev. sec.* 138 ; *Elliott* v. *Pearl*, 10 *Peters' R.* 412 ; *Mima Queen* v. *Hepburn*, 7 *Cranch*, 290 ; *Davis* v. *Wood*, 1 *Wheaton's R.* 6 ; *Regina* v. *The Inhabitants of the County of Bedford, per Lord Campbell, C. J.,* 29 *English L. & E. R.* 85.)

For these reasons, we think, there was error in the ruling of the court below.

Judgment reversed, and cause remanded.