Argued March 17, decided April 12, 1910.

# STATE v. McGINNIS.

[108 Pac. 132.]

STATUTES— DISORDERLY HOUSE— REPEAL — RE-ENACTMENT — "COMMON FAME.

1. Section 1932, B. & C. Comp., punishes, upon conviction, one who shall keep a house of ill fame for purposes of lewdness, etc., and Section 1933 provides that in all prosecutions under the preceding section "common fame" shall be competent evidence under the indictment. Laws 1905, c. 211, amended Section 1932 so as to read as follows: "Any person who shall keep or permit to be kept, either in a house, boat, etc., a house of ill fame for the purpose of lewdness, etc., in any house, etc., or other place of which he is the owner, lessee, etc., shall be guilty of a misdemeanor and punished." *Held* that, where a statute is amended "so as to read," the amended section is not considered to have been repealed and re-enacted, but, in absence of a clear provision to the contrary, only the additions to the original statute are considered as a new enactment, and, as the provisions of the original Section 1932 were substantially carried into the amended section, the original section remained in force after the amendment, so that Section 1933 applied thereto, and hence, in a prosecution for keeping a house of ill fame, "common fame," which serves to establish a character either of a person or thing, was competent evidence to show whether the house was habitually used for purposes of prostitution.

CRIMINAL LAW—EVIDENCE—BEST EVIDENCE.

2. The best evidence obtainable must be produced to prove a fact.

CRIMINAL LAW—HEARSAY—REPUTE AS TO FACT—POSSESSION OF LAND.

3. While, as a rule, in absence of statute, ownership or possession of land cannot be proved by general reputation, hearsay evidence is admissible to establish possession where by reason of antiquity proof by living witnesses is impossible.

DISORDERLY HOUSE— PROSECUTION— EVIDENCE— ADMISSION— COMMON FAME.

4. Under Section 1933, B. & C. Comp., providing that in all prosecutions for keeping a house of ill fame, "common fame" shall be competent evidence in support of the indictment, common reputation of accused's ownership of the house alleged to have been used as a house of ill fame was admissible to prove her ownership thereof.

CRIMINAL LAW—CHARGES—CONSTRUCTION.

5. In reviewing alleged error in an instruction it must be examined with reference to the particular facts to which it was intended to be applied.

DISORDERLY HOUSE—PROSECUTIONS—INSTRUCTIONS.

6. In a prosecution for keeping a house of ill fame, an instruction, in response to the argument of accused's counsel, that, unless the jurors themselves were guiltless of the offense of which accused was charged, they should follow the Saviour's admonition given with reference to the woman taken in adultery, that "it is not a question of casting the first stone or any other stone; the jury has nothing to do with that," was proper.

From Marion:   GEORGE H. BURNETT, Judge.

The defendant, Hattie McGinnis, was tried and convicted of the crime of keeping a house of ill fame, and from the judgment following, she appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. John A. Carson, Mr. Thomas Brown, Mr. William M. Kaiser* and *Mr. Myron E. Pogue,* with oral arguments by *Mr. Carson* and *Mr. Kaiser.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General; *Mr. John H. McNary,* District Attorney, and *Mr. Walter C. Winslow,* Deputy District Attorney, with an oral argument by *Mr. Winslow.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The defendant, Hattie McGinnis, having been convicted of the crime of keeping and setting up, for the purpose of prostitution, fornication, and lewdness, a house of ill fame, which, it is alleged, she owns and to the possession of which she is entitled, appeals from the judgment which followed.   Her counsel contend that the alteration of a section of the Code, which formerly defined the offense and prescribed the punishment for a commission thereof, having been preceded by the clause, "is hereby amended so as to read as follows," repealed the prior law, made the change a new enactment, removed it from the effect of another section applicable to the original act, whereby common fame was made competent evidence to substantiate the averments of an indictment, rendering inadmissible evidence of general reputation respecting any allegation of the formal accusation, and that in receiving proof of such common fame, over objection and exception, an error was committed.   The section of the prior law when first enacted was as follows:

"If any person shall keep or set up a house of ill fame, brothel, or bawdyhouse for the purpose of prostitution,

fornication, or lewdness, such person, upon conviction thereof, shall be punished," etc.   B. & C. Comp. § 1932.

For a violation of the provisions of the act thus set forth, the following method of proving the offense was permissible, viz.:

"In all prosecutions for the crime defined in Section 1932, common fame shall be competent evidence in support of the indictment."   B. & C. Comp. § 1933.

The part first quoted was altered, to-wit:

"That Section 1932 of Bellinger and Cotton's Annotated Codes and Statutes of Oregon be and the same is hereby amended so as to read as follows:   (Sec. 1932.) Any person who shall keep or set up, or suffer or permit to be kept or set up, either in a house, boat, ship or vessel, a house of ill fame, brothel or bawdyhouse, for the purpose of prostitution, fornication or lewdness, in any house, room or shop, or other building whatsoever, or any boat, booth or other place of which he is the owner, lessor, lessee, or to the possession of which he is entitled, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished."   Laws 1905, c. 211.

Whatever the rule may be in other jurisdictions, it is settled in this State that where a section of an act is amended "so as to read as follows," and the later law sets forth the changes contemplated, the parts of the old section that are incorporated in the new are not to be treated as having been repealed and re-enacted, but are to be considered as portions of the original statute, unless there is a clear declaration to the contrary, in the absence of which it is only the additions that have been made to the original section that are to be regarded as a new enactment.   *Stingle* v. *Nevel*, 9 Or. 62; *Eddy* v. *Kincaid*, 28 Or. 537 (41 Pac. 156, 655) ; *Small* v. *Lutz*, 41 Or. 570 (67 Pac. 421: 69 Pac. 825) ; *Allison* v. *Hatton*, 46 Or. 370 (80 Pac. 101) ; *Renshaw* v. *Lane County Court*, 49 Or. 526 (89 Pac. 147.)   A comparison of the primary section with the amended enactment will show that the language of the former is set forth in the  latter  without  material

alteration. As the original section of the act remained in force, notwithstanding the amendment added other clauses thereto, common fame, which serves to establish a character either of a person or to a thing (3 Words & Phrases, 2672), was competent evidence to substantiate the issue whether or not the house in question was habitually used for the purpose of prostitution. It is not to be supposed that the crime of adultery or fornication will be committed in public, or that parties guilty thereof will be taken in the very act; and such being the case, in order to suppress vice of that form, the statute declares that resort may be had to the character of proof indicated, and, such evidence having been made competent by express enactment, no error was committed in receiving testimony as to the general reputation of such house. B. & C. Comp. § 1933.

2. The court, over objection and exception, permitted witnesses to testify as to the reputation of the defendant's ownership of the house alleged to have been used for immoral purposes, and of her right to the possession thereof, and it is maintained by her counsel that errors were thereby committed. By an inspection of Section 1932, B. & C. Comp., as amended, it will be ascertained that it is the owner of a structure, or the person entitled to the possession thereof, who keeps or sets up, or suffers or permits to be kept up, a house of ill fame, who is deemed guilty of the crime of maintaining a brothel. It would seem that the offense thus denounced comprises acts either of omission or commission, and that if the owner of the structure should lease it for the purpose of prostitution, or knew that it was being used therefor and interposed no objections thereto, he might be convicted of the offense proscribed. In such case, however, evidence of his title by the production of certified copies of his deeds, or by proof of his adverse holding, would probably be the most efficient means or establishing that fact, which proof could be secured from the public records or from

persons conversant with the fact, without requiring the defendant to furnish evidence which might tend to his conviction. The same mode of proof would undoubtedly be equally efficacious in the case of a lessor who sublet real property under the circumstances so supposed, providing evidence of the demise were recorded. By the amended statute, a lessee of property who keeps or sets up a house of ill fame is guilty of a misdemeanor, and upon conviction thereof may be punished. A lease of real property for a term not exceeding one year may be effectuated without a conveyance or other instrument in writing. B. & C. Comp. § 793. Since a valid estate in land can be created for the term and in the manner thus indicated, and as a right to the possession of premises to which a lessee is entitled might not be established in a criminal action to which he was a party, or in a case where the lessor might be found guilty for his act of commission or omission, many persons who commit crimes of the kind herein complained of might go unpunished, unless special means were adopted to repress their vicious practices. The rules of law require the production of the best evidence obtainable to substantiate an issue, and, as reputation respecting the right to the possession of property by a lessee or by an owner in the cases conjectured may be the only kind that can be procured, statutes have been adopted making proof of common fame admissible to establish the ownership of real property and of a right to its possession.

3. In the absence of legislative enactment, however, ownership or possession of land cannot usually be substantiated by proof of general reputation. *Berniaud* v. *Beecher,* 76 Cal. 394 (18 Pac. 598) ; *Wendell* v. *Abbott,* 45 N. H. 349. An exception to his rule exists, rendering hearsay evidence admissible to establish a right to the possession of land in cases where by reason of antiquity it is impossible to obtain the requisite proof from living

witnesses. *McEwen* v. *Portland,* 1 Or. 300; *Casey's Lessee* v. *Inloes,* 1 Gill (Md.) 430 (39 Am. Dec. 658, 669.)

4. Our statute (B. & C.. Comp. § 1933) does not limit "common fame" to the evil behavior prevailing in a bawdyhouse, and such phrase may be as well employed to establish the other averment of the indictment respecting the ownership of the property or the right to its possession as the general reputation of the building, and such being the case, no error was committed in admitting the evidence in question.

5. The court, in its charge, said: "It is not a question of casting the first stone or any other stone. The jury has nothing to do with that." An exception was reserved to the language so employed, and it is insisted that an error was committed in giving it. It is argued by defendant's counsel that the part of the instruction thus repeated was given in response to and in refutation of their discussion of the facts to the jury to persuade them, if possible, to "temper justice with mercy."

6. It is fair to assume that by the argument advanced the jury were in effect admonished by defendant's counsel that, unless they were guiltless of the particular offense of which she was then being tried, they should follow the declarations of the Saviour, made when a woman was brought before him charged with adultery. The instruction complained of must be examined as an application of law to the particular facts involved. The duty of jurors is to determine an issue according to the rules announced by the court. It is not their province to base a verdict on their preconceived notion of justice, their passions, prejudices, or personal experience acquired in violations of the moral code. The instruction correctly stated the law and no error was committed in giving it.

It follows from these considerations that the judgment should be affirmed; and it is so ordered. AFFIRMED.