Argued May 8, reversed June 6, rehearing denied July 3, 1917.

## CAMP CARSON MINING CO. v. STEPHENSON.*

(165 Pac. 351.)

**Injunction—Suit to Restrain Trespass—Title or Possession to Support Suit.**

1. In a suit to enjoin trespass, prior possession of the premises constitutes *prima facie* evidence and affords sufficient strength of the plaintiff's title to entitle him to relief against a mere trespasser who entered without right.

　　[As to injunction against trespass on real estate, see notes in 11 Am. Dec. 498; 53 Am. Rep. 346; 99 Am. St. Rep. 731.]

**Waters and Watercourses—Appropriation—Abandonment.**

2. Under Section 5136, L. O. L., declaring that ditches and mining flumes permanently affixed to the soil are real estate, provided that,

*As to abandonment or loss of right of prior appropriators, see note in 30 L. R. A. 265.　　　　　　　　　　　　Reporter.

when the owner shall cease to operate or exercise ownership for a period of five years, or shall remove from the state with the intent to change residence, and shall remain absent one year without using or exercising ownership, he shall be deemed to have lost all interest therein which was, impliedly, amended in respect to the period of limitation by Section 6571, L. O. L., providing that the right to appropriate water may be lost by abandonment, and that by failure or neglect to use same for a period of two years such water shall revert to the public and be subject to other appropriation, but the question of abandonment shall be one of fact to be tried and determined as to the questions of fact, where there was no evidence to explain or excuse the delay of a mining corporation for more than two years to use its ditch or flume or water thereby conducted, the corporation had abandoned its appropriation, and its trustee in bankruptcy could convey no right to defendants, who in entering such property were trespassers upon the property of plaintiff, who was in actual possession after appropriation, and further trespasses by defendants will be enjoined.

From Union: JOHN W. KNOWLES, Judge.

In Banc.   Statement by MR. JUSTICE MOORE.

This is a suit to enjoin trespasses upon real property. The complaint states, in effect, that the plaintiff, Camp Carson Mining and Power Company, is an Oregon corporation and the owner and entitled to and in the possession of a group of placer mining claims, containing 1,440 acres of unpatented land, in Union County, Oregon, commonly known as the Camp Carson Mines, of which tract 290 acres are particularly described; that it is the owner of the right to use all the water of the Grande Ronde River, diverted at a point on the northwest quarter of the northwest quarter of section 23, in township 6 south of range 36 east of the Willamette Meridian, and conducted in a ditch and flume to a point near the center of section 15, in that township and range, where it is and for a long time has been used in operating mines; that the defendants, M. A. Stephenson and H. W. ReDell, in the fall of 1914 unlawfully tore down a house belonging to the plaintiff and converted the lumber to their own use; that on April 15, 1915, they unlawfully cut the dam, whereby

the water was diverted from the river into the ditch and flume referred to, and converted the lumber in the flume to their own use; that they unlawfully cut a ditch across a road owned by the plaintiff, and threaten to continue such trespasses.

The answer controverts the material averments of the complaint, and alleges, in effect, that the house referred to stood on their mining ground; that they were the owners of the ditch and flume mentioned and had the legal right to intermeddle therewith and to remove the lumber therefrom; and that the ditch which interfered with the road was dug on their own mining land and the excavation was covered with a bridge.

The reply put in issue the allegations of new matter in the answer, whereupon the cause was tried resulting in a decree dismissing the suit, and the plaintiff appeals.      REVERSED. DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. Turner Oliver.*

For respondent there was a brief and an oral argument by *Mr. James D. Slater.*

MR. JUSTICE MOORE delivered the opinion of the court.

The evidence shows that, on October 18, 1907, the Indiana Mining Company, an Oregon corporation, duly appropriated from the Grande Ronde River, at a point in the northwest corner of section 23, in township 6 south of range 36 east of the Willamette Meridian, about 600 inches of water, miner's measurement, which was conducted northwesterly by means of a ditch and flume and used in section 9 of that township and range in operating a quartz-mill on land known as the Golden Star Mine. The Grande Ronde Milling and Power

Company, an Oregon corporation, on January 29, 1910, and March 4th of that year, filed amended notices of location of mining claims, showing a selection of 360 acres of land in section 15 and 60 acres in section 10, in the township and range specified, which location seems to conflict with that of the Indiana Mining Company. The latter corporation, on November 1, 1910, executed to Burt German a deed conveying *inter alia*

"those certain quartz mining claims known, located and recorded as the Golden Star, Mayflower, Wallowa, and Leasia, situated on the Grande Ronde River, about one mile above the mouth of Clear Creek in what is known as the Camp Carson Mining District in Union County, Oregon. * * Also that certain ditch and water right connected therewith, which said ditch taps the Grande Ronde River and diverts water therefrom, on section 9, township 6 south, range 36 east, Willamette Meridian, which said ditch and water right is used for power purposes in operating the machinery connected with said mining property."

Burt German and his wife, on November 16, 1910, executed to the Hot Springs Copper Company, an Oregon corporation, a deed conveying to it *inter alia* the property last above described. The latter corporation was, on May 22, 1912, duly adjudged to be a bankrupt by consideration of the federal court of Oregon, and W. A. Shoemaker was appointed and duly qualified as trustee for the estate.

August Hug, as sheriff of Union County, Oregon, on April 29, 1913, by virtue of a decree and order of sale issued in a suit foreclosing miners' liens wherein H. A. Shropshire was plaintiff and the Oregon Mining and Milling Company and the Grande Ronde Mining and Power Company, corporations, were defendants, sold at public auction to that plaintiff the property of the defendants known as the Camp Carson Mines, in sec-

tions 4, 5, 9, 10, 15, 16, 21, 22, and 28, in township 6 south of range 36 east of the Willamette Meridian.

W. A. Wilson and Frank F. Turner, on June 15, 1914, filed a notice of appropriation of 1,000 inches of water, miner's measurement, from Grande Ronde River, to be diverted at the northwest corner of section 23, in that township and range, and conducted by a ditch and flume to a point on Tanner Creek near the center of section 15 in such township. The notice contained a clause as follows:

"And it is the intention of the undersigned to use as far as possible the old Indiana ditch, now abandoned."

H. A. Shropshire, on August 12, 1914, executed to H. T. Harvey a deed of all the property so conveyed to him by the sheriff of Union County, Oregon, particularly describing each tract of land and the water right used in connection therewith. H. T. Harvey and wife, on August 31, 1914, deeded to the Camp Carson Mining and Power Company, the plaintiff herein, all of such property. The plaintiff, on September 24, 1914, applied to the state water board of Oregon to appropriate from the Grande Ronde River water to be used on its mining claims and conducted in the ditch and flume constructed by the Indiana Mining Company.

W. A. Wilson and Frank F. Turner, on September 30, 1914, executed to the plaintiff a deed transferring all their right to the use of the water of the river which was initiated by the notice given by them June 15th of that year.

W. H. Shoemaker, the trustee in bankruptcy of the Hot Springs Copper Company, pursuant to authority of the referee and in consideration of $50, of which $30 was evidenced by a promissory note, executed to the defendants herein, on October 31, 1914, a deed pur-

porting to transfer all the bankrupt's right in and to the ditch and flume constructed by the Indiana Mining Company.

The foregoing comprises a brief statement of the muniments of title of the respective parties which were received in evidence and have been arranged in chronological order. It is maintained by defendant's counsel that the decree rendered in the suit to foreclose the miners' liens and the order of sale issued thereon, whereby the sheriff of Union County, Oregon, undertook to sell and convey to H. A. Shropshire the mining property described in some of these conveyances, was ineffectual for any purpose, and that this being so, the plaintiff is not entitled to equitable intervention.

It will be remembered that this is a suit to enjoin alleged trespasses committed upon real property of which the plaintiff was in the undisputed possession, asserting ownership and securing the occupancy thereof by a conveyance of the land, no part of which is claimed by either of the defendants, except 60 acres hereinafter specified. In *Ricard* v. *Williams,* 7 Wheat. (U. S.) 59, 107 (5 L. Ed. 398), it was held that the possession of land by a party claiming it as his own in fee was *prima facie* evidence of his ownership and seisin of the inheritance. In deciding that case Mr. Justice STORY says:

"For the law will never construe a possession tortious unless from necessity. On the other hand, it will consider every possession lawful, the commencement and continuance of which is not proved to be wrongful. And this upon the plain principle that every man shall be presumed to act in obedience to his duty, until the contrary appears. When, therefore, a naked possession is in proof unaccompanied by evidence, as to its origin, it will be deemed lawful and co-extensive with the right set up by the party."

1. In a controversy before a judicial tribunal relating to land, prior possession of the premises constitutes *prima facie* evidence and affords sufficient strength of the plaintiff's title to entitle him to relief against a mere trespasser who entered without right: *McEwen* v. *City of Portland,* 1 Or. 300; *Oregon Ry. & Nav. Co.* v. *Hertzberg,* 26 Or. 216 (37 Pac. 1019); *Browning* v. *Lewis,* 39 Or. 11 (64 Pac. 304); *Sommer* v. *Compton,* 52 Or. 173 (96 Pac. 124, 1065); *Todd* v. *Pac. Ry. & Nav. Co.,* 59 Or. 249 (110 Pac. 391, 117 Pac. 300); *Carroll* v. *McLaren,* 60 Or. 233 (118 Pac. 1034); *Friendly* v. *Ruff,* 61 Or. 42 (120 Pac. 745); *Kingsley* v. *United Rys. Co.,* 66 Or. 50 (133 Pac. 785); *Parker* v. *Wolf,* 69 Or. 446 (138 Pac. 463).

2. It is unnecessary to consider the decree in the suit to foreclose the miners' liens, pursuant to which possession by mesne conveyances was given to the plaintiff, and such being the case it is entitled to maintain this suit against the defendants, whose answer does not controvert such right of possession, except as to 60 acres of mining land.

The testimony shows that the plaintiff having obtained a deed of the mining claims immediately commenced cleaning out a part of the old Indiana ditch, beginning at the point of diversion, and about September 30, 1914, or a month before the defendants secured their deed from the trustee in bankruptcy, conducted by means of such ditch and flume water from the Grande Ronde River to a point near the center of section 15, in the township and range mentioned, where the volume was used in operating machinery employed to save the fine gold. The defendants, in April, 1915, relying upon the validity of their deed executed by the trustee in bankruptcy, prevented water from flowing into the ditch and removed from the flume, forming a part of

the conduit, lumber, which they took to their mining claims, consisting of 60 acres, thereby precipitating this suit.

The question to be considered is whether or not the Indiana Mining Company had abandoned its right to the ditch and flume, or its grantee the Hot Springs Copper Company had forfeited its right thereto, so that the latter's trustee in bankruptcy had no title or estate in or to the conduit which he could sell or convey. The testimony discloses that the Indiana Mining Company, pursuant to the notice of October 18, 1907, constructed the ditch and flume referred to, from the Grande Ronde River northwesterly to its mines and used the water thus diverted from that stream in operating a quartz-mill. The extraction of gold by such means could not have been very profitable, for the work ceased in the year 1908, and was never thereafter resumed. Evidently the Indiana Mining Company, in order to protect its interest in the ditch and water right, caused some work to be done on its property after it quit operating the quartz-mill. Thomas Loftus, in referring thereto, testified that in the year 1909 or 1910 he was employed in behalf of that corporation by William Muir:

"Q. And what particular work were you and Mr. Muir doing?

"A. We fixed up that Indiana ditch and turned water into it. * * We were just prospecting to see if we couldn't find some trace of a ledge that had been lost, or something like that. * *

"Q. How long did Mr. Muir stay there on the ditch?

"A. Oh, it took quite a while to clean it out all the way—was something like three weeks, and I guess we used it about a week after we got the water."

This witness, referring to some machinery which he saw, testified: "It was there in the mill." Alluding to

Mr. Muir and to the Indiana Mining Company, Mr. Loftus stated on oath:

"He told me after the machinery was moved out that he wasn't in charge of it any longer; that they dismissed him."

This witness was unable accurately to state in what year he assisted in performing such work, for on cross-examination, he testified in respect thereto: "It might have been 1911. It was along there."

In speaking of the ditch Mr. Loftus stated upon oath:

"It might have been in use in 1910, but no later than that that I know of."

He further testified that the work which Mr. Muir and he rendered was performed in August and September.

John McIlroy testified that the services so performed were furnished in the year 1910, but that in the next year he worked with Mr. Muir 49 days doing assessment work for the Indiana Mining Company, and that the quartz-mill was taken away from the mines in the fall of 1911. The defendant, M. A. Stephenson, corroborates such testimony in respect to the time of removing the machinery.

When it is remembered that the Indiana Mining Company, on November. 1, 1910, sold and conveyed to Burt German all its mining claims, water rights, mills, machinery, etc., and thereafter, so far as it can be determined from the evidence before us, had no interest in the property, it would seem that Mr. McIlroy and Mr. Stephenson had unintentionally erred in concluding that the last assessment work had been performed on such mining claims in the year 1911. Mr. McIlroy does not state, however, what month during that year he assisted in doing the assessment work

for the Indiana Mining Company.   No work whatever appears thereafter to have been done on such mining grounds until the plaintiff's agents, in September, 1914, took possession of the ditch and flume, and about the 30th of that month turned into such conduit water, which was carried to a point near the center of section 15, in the township and range mentioned, where it was used for mining purposes.   Giving to the testimony of Mr. McIlroy full credit as to the year when he assisted in doing such assessment work a period of three full years had elapsed before any other labor or service was performed or any money or material was furnished in making improvements upon any of the mining property; and this being so, had the water right together with the ditch and flume been abandoned when plaintiff's agents took possession thereof in September, 1914?   As we understand the decision of the trial court was founded upon the limitation prescribed by Section 5136, L. O. L., which reads:

"Ditches and mining flumes, permanently affixed to the soil, are hereby declared to be real estate; *provided,* that whenever any person, company, or corporation, being the owner of such ditch, flume, and the water right appurtenant thereto, shall cease to operate or exercise ownership over said ditch, flume, or water right, for a period of five years, and every person, company, or corporation who shall remove from this state with the intent or purpose to change his or its residence, and shall remain absent one year without using or exercising ownership over such ditch, flume, or water right, shall be deemed to have lost all title, claim, and interest therein."

This provision is Section 9 of a statute enacted October 14, 1898 (Laws Or. 1898, p. 16), and is entitled, "An act relating to mining claims," etc.   As thus quoted the language employed was impliedly amended

in respect to the period of limitation by Section 20 of a statute approved February 18, 1899 (Laws Or. 1899, p. 172), entitled, "An act to provide for the appropriation of water from the lakes and running streams of the State of Oregon for the purpose of developing the mineral resources of the state, and for other purposes," etc., which provisions are incorporated in Section 6571, L. O. L., and read:

"The right to appropriate water hereby granted may be lost by abandonment; and if any persons, companies, or corporations constructing a ditch, canal, flume, or pipe line under the provisions of this act shall fail or neglect to use the same for a period of two years at any time, it shall be taken and deemed to have abandoned its appropriation, and the water appropriated shall revert to the public and be subject to other appropriations in order of priority; but the question of abandonment shall be one of fact, to be tried and determined as other questions of fact."

In *Pringle Falls Power Co.* v. *Patterson*, 65 Or. 474, 486 (128 Pac. 820, 132 Pac. 527), Mr. Justice Bean, adverting to the appropriation of water to a beneficial use and referring to the section of the statute last set forth and to the limitation thus prescribed, says:

"Such right may be extinguished by any act showing an intent to surrender or abandon the right, after which, if the person having the right ceases its use for the statutory period for abandonment, his interest is lost."

If the clause of Section 6571, L. O. L., "But the question of abandonment shall be one of fact to be tried and determined as other questions of fact," be construed as creating only a disputable presumption, no testimony was given at the trial tending in any manner to explain or excuse the delay of the Indiana Mining Company or its grantee, the Hot Springs Copper Com-

pany, for more than two years in using the ditch, flume, or water thereby conducted; and hence the latter corporation had abandoned its appropriation, and its trustee in bankruptcy conveyed no right to the defendants, who were and are trespassers upon the plaintiff's premises, the right to the possession of which is undisputed.

The evidence shows that a part of the mineral lands described in the complaint, to wit, the south half of the southeast quarter of the southwest quarter, the south half of the southwest quarter of the southeast quarter, and the west half of the southeast quarter of the southeast quarter of section 10, in township 6 south of range 36 east of the Willamette Meridian, containing 60 acres, was located by the defendants, and that the house which they tore down and removed the lumber therein to their claims stood upon such disputed tract. No testimony was offered tending to show which party had the superior right to this particular 60 acres of land, so that if the lumber had not been taken by the defendants no injunction would be issued to restrain the removal of such material because of a failure to establish a pre-existing right.

The alleged interference by the defendants with the road was only temporary, and as disclosed by the testimony they have built a bridge across the way, the travel along which was interrupted by the excavation of a ditch.

The decree will, therefore, be reversed and one entered here enjoining each of the defendants, his agents, and servants from interfering in any manner with the diversion of the waters of the Grande Ronde River at the point stated in the complaint or with the flow of the specified volume in the Indiana ditch or flume to the center of section 15, in the township and range speci-

fied, and from trespassing upon the plaintiff's premises, the right to the possession of which is undisputed.

REVERSED. DECREE RENDERED.

REHEARING DENIED.

MR. JUSTICE McCAMANT and MR. JUSTICE BEAN took no part in the consideration of this case.

---

Argued May 8, modified June 6, rehearing denied July 3, 1917.