Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices.**
*414 **297 Under Article IV, section 33, of the Oregon Constitution, the legislature may not reduce a criminal sentence that was "approved by the people" through the initiative or referendum process by a simple majority vote, but must garner a two-thirds majority in both houses.[1] In this certified appeal, we must determine whether that constitutional rule applies to House Bill (H.B.) 3078 (2017), which recently was enacted by a simple majority in the legislature and which reduces certain statutory presumptive sentences. For the reasons that follow, we conclude that H.B. 3078 (2017) does not "reduce a criminal sentence approved by the people" within the meaning of Article IV, section 33, and that it could be, and was, validly enacted by a simple majority of the legislature.
FACTS
Defendant was charged with theft in the first degree, ORS 164.055, in June 2017. At that time, ORS 137.717 provided a presumptive sentence of 18 months imprisonment for first-degree theft for defendants having two prior convictions for certain specified crimes, to be increased by two months from that baseline for every additional prior conviction of those specified crimes. ORS 137.717(1)(b) (2015). Under that scheme, defendant in the present case would have been subject to a presumptive sentence of 22 months in prison, if convicted.[2] But, while defendant's case was pending, H.B. 3078 (2017), which had been enacted by the legislature by a simple majority, became effective. See Or. Laws 2017, ch. 673, §§ 12, 13 (providing bill would become operative on, and apply to sentences imposed after, **298 January 1, 2018). Among other things, H.B. 3078 (2017) amended ORS 137.717 (2015) to provide a presumptive sentence of 13 months imprisonment for a first-degree theft conviction of a person in defendant's circumstances. Or. Laws 2017, ch. 673, § 5.
In the plea negotiations in defendant's case, an issue arose as to which version of *415 ORS 137.717 would apply if defendant were to plead guilty to first degree theft. The state insisted, in its sentencing memorandum, that the trial court would be required to sentence defendant in accordance with the 2015 version of the statute. It posited that the presumptive sentences therein had been "approved by the people" as part of Ballot Measure 57 (2008), a legislatively referred measure that increased prison sentences for repeat property-crime offenders. The state argued that that sentence had not lost its status as one that had been "approved by the people" when, in 2009, by a two-thirds majority, the legislature enacted a bill, H.B. 3508 (2009), that, in one section, reduced the sentences set out in ORS 137.717 (2015), but, in another section, returned them to their previous ranges, effective some two years later. Consequently, the state argued, H.B. 3078 (2017) was unconstitutional: the legislature had reduced a sentence "approved by the voters" when, by a simple majority and not the two-thirds majority required by Article IV, section 33, it reduced the presumptive sentences set out in ORS 137.717(1)(b) (2015). Thus, according to the state, the presumptive 13-month sentence for defendant's offense provided by H.B. 3078 (2017) had not been constitutionally enacted and had not replaced the 18-month presumptive sentence, with additional months for more than two prior convictions, set out in ORS 137.717(1)(b) (2015).
In his own sentencing memorandum, defendant argued that H.B. 3078 (2017) had reduced a presumptive sentence that had been adopted by the legislature, not one that had been "approved by the people." Defendant acknowledged that "the people" had approved an 18-month presumptive sentence when they enacted Measure 57 in 2008, but he argued that the legislature had lawfully reduced and replaced that sentence-and others-when, in 2009, it enacted H.B. 3508 and amended ORS 137.717 by a two-thirds majority in both houses. Defendant recognized that, under the 2009 **299 amendment, the reduced sentences provided therein shifted back, after two years, to sentences that were commensurate with the sentences that the voters had approved in Measure 57. But he insisted that, because both the reduced sentences for the time period from February 15, 2010 to January 1, 2012 and the restored sentences for the period beginning on January 1, 2012 had been enacted by the legislature, not the people, the resulting sentences-including the one at issue here-did not constitute "criminal sentence[s] approved by the people" within the meaning of Article IV, section 33. Accordingly, defendant argued, although H.B. 3078 (2017) reduced the presumptive sentence set out in ORS 137.717 (1)(b) (2015) on a simple majority vote, that reduction was to a sentence enacted by the legislature, not to one "approved by the people," and therefore did not violate Article IV, section 33.
The trial court rejected defendant's argument and agreed with the state that H.B. 3078 (2017) had been enacted in violation of Article IV, section 33. Based primarily on recitals in the preamble to the 2009 bill that amended ORS 137.717, the trial court determined that that bill reflected a legislative intent not to reduce the voter-approved sentences in Measure 57 (2008), but to phase them in over time. The trial court reasoned that, although the legislature had temporarily reduced the voter-approved sentences by the requisite supermajority, it ultimately had resurrected them. Thus, the trial court concluded, the sentences that were in place when H.B. 3078 came before the legislature in 2017 were the original sentences that the voters had approved as Measure 57, and, under Article IV, section 33, they could not be reduced by the simple majority vote that H.B. 3078 (2017) had garnered.
After the trial court announced its decision, defendant conditionally entered a guilty plea, and the trial court imposed a stipulated downward departure sentence of 24 months of probation, which would be set aside in favor of a prison term of 22 months (the presumptive sentence under ORS 137.717(1)(b) (2015) ) if his probation were to be revoked. Defendant reserved the right to appeal the trial court's determination that the 13-month presumptive sentence set out in H.B. 3078 (2017) had been unconstitutionally adopted, and he **300 exercised that right once the judgment of conviction and sentence were entered. Defendant filed a notice of *416 appeal in the Court of Appeals, but that court certified the appeal to this court in accordance with ORS 19.405 and S.B. 1543 (2018),[3] and this court accepted the certification. After defendant filed his opening brief and various individuals and organizations filed amicus briefs in support of defendant's position, the state filed an answering brief in which it conceded that the trial court had erred in concluding that H.B. 3078 (2017) had been enacted in violation of Article IV, section 33.[4]
That concession does not affect the task before this court. At bottom, the issue here is one of constitutional interpretation, and this court is duty-bound to interpret the law correctly, without regard to the parties' arguments or lack thereof. See Elk Creek Management Co. v. Gilbert , 353 Or. 565, 570, 303 P.3d 929 (2013) (court's task "is to interpret the statute correctly regardless of the parties' interpretations and concessions" (internal quotation marks and citation omitted) ); Stull v. Hoke , 326 Or. 72, 77, 948 P.2d 722 (1997) (court "is responsible for identifying the correct interpretation, whether or not asserted by the parties"). Accordingly, in deciding what Article I, section 33, means by "a bill that reduces a criminal sentence approved by the people," we consider not only the arguments that defendant and the amici curiae make before this court and that the state made in the trial court, but any other argument or issue that might otherwise come to our attention.[5] However, before turning to that interpretive task, we describe in greater detail the legislative **301 circumstances that make the constitutional wording relevant.
In 2008, the voters enacted Measure 57, which had been referred to them by the legislature. Among other things, Measure 57 increased the then-existing presumptive sentences set out in ORS 137.717 for certain property crimes when committed by repeat offenders, reduced the number of predicate offenses required to trigger those presumptive sentences, and added two months to the presumptive sentences provided for each additional predicate offense.[6] Measure 57 became effective on January 1, 2009, meaning that the presumptive sentences that it provided applied to crimes committed on or after that date. Or. Laws 2008, ch. 14, § 12.
*417 Within months of Measure 57's effective date, however, members of the legislature concluded that its full implementation should be delayed, primarily because the onset of an economic downturn had put in doubt the state's ability to pay for the treatment programs and longer prison sentences that it required. They introduced H.B. 3508 (2009), a bill that **302 sought to amend ORS 137.717, as it had been amended by Measure 57, for that reason. In its preamble, the bill recited the circumstances that led to its introduction-the state and the world were in the midst of a serious recession; the voters had approved Measure 57 which sought "to reduce property crime through drug and alcohol treatment combined with increased incarcerative sanctions"; the treatment programs that Measure 57 envisioned "need[ed] time to be implemented and adequate funding in order to be effective"; and the state "need[ed] to phase in the implementation of * * * Measure 57 in order to achieve the goal of reducing property crime in Oregon." Notably, the preamble described the bill as "amending * * * ORS 137.717" and "providing for criminal sentence reduction that requires approval by a two-thirds majority."
The 2009 bill employed an unusual mechanism to "phase in" the increased sentences that Measure 57 had called for. First, section 8 of the bill amended ORS 137.717 to read as it had before the adoption of Measure 57: It returned the presumptive sentence for first-degree theft by a repeat offender to 13 months imprisonment, raised the number of predicate offenses required to make that sentence applicable to four, and removed the wording that added two months to the presumptive sentence for every additional prior conviction of a specified type.[7] The bill stated, in section 48(3), that **303 those section 8 amendments to ORS 137.717 would become operative on February 15, 2010. Next, in section 11, the bill amended ORS 137.717"as amended by * * * section 8 of this 2009 Act" to read as it had under Measure 57.[8] Section 48(4) of the bill provided that those section 11 amendments to ORS 137.717 would become operative on January 1, 2012.
The bill was enacted by a two-thirds majority in each chamber of the legislature in June of 2009. As a result of its enactment, the presumptive sentences set out in ORS 137.717, as amended by Measure 57, were reduced starting in February 2010, but returned to the longer presumptive sentences that had been provided in Measure 57 in January 2012.
*418 ANALYSIS
We must determine whether H.B. 3078 (2017) is "a bill that reduces a criminal sentence approved by the people," which, under Article IV, section 33, can only be enacted by a two-thirds majority in both houses. That determination depends on the meaning of the quoted words.
Because Article IV, section 33, was adopted by the voters through the initiative process, our focus in construing **304 it is on the intent of the voters who approved it. Martin v. City of Tigard , 335 Or. 444, 451, 72 P.3d 619 (2003). In interpreting a constitutional provision adopted by initiative, we generally begin with the constitutional text, on the theory that that is the best evidence of the voters' intent. Id. We also consider the context of the provision, including related constitutional provisions, the statutory overlay at the time of the provision's adoption, and any opinions by this court that are relevant to the matter. Id. Finally, we may consider the measure's enactment history to the extent that it is helpful. Ecumenical Ministries v. Oregon State Lottery Comm. , 318 Or. 551, 559, 871 P.2d 106 (1994).
There can be little doubt what the voters who enacted Article IV, section 33, meant by a "bill that reduces a criminal sentence." Criminal sentences ultimately are imposed by judges, and the only way that a legislative action (such as a bill) can sensibly "reduce[ ] a criminal sentence" is by authorizing or requiring judges to impose a shorter period of imprisonment or probation than is authorized or required under the prevailing sentencing statutes. H.B. 3078 (2017) fits that description: As described above, prior to the enactment of H.B. 3078 (2017), ORS 137.717(1)(b) (2015) provided a presumptive sentence of 22 months imprisonment for first-degree theft by a four-time repeat offender like defendant, and H.B. 3078 directed judges toward a much shorter presumptive sentence of 13 months of imprisonment.
That leaves us to consider what it means for a criminal sentence to be "approved by the people under section 1 of * * * Article [IV]." The term "approve" has two ordinary meanings that could be applicable: (1) "to judge and find commendable or acceptable: think well of: have or express a favorable opinion or judgment of"; or (2) "to vote into effect : pass formally." Webster's Third New Int'l Dictionary 106 (unabridged ed. 2002). The term's juxtaposition with the phrase "by the people under section 1 of * * * Article [IV]" establishes that, as used in Article IV, section 33, it is the latter meaning-"to vote into effect"-that is intended. Specifically, a criminal sentence that is "approved by the people under section 1 of * * * Article [IV]" is one that "the people" have enacted in the exercise of their **305 initiative and referendum powers, as provided in Article IV, section 1.[9] Thus, Article IV, section 33 's legislative supermajority requirement for bills that reduce a criminal sentence "approved by the people" is concerned with which legislative body-the Legislative Assembly or the people-actually enacted the criminal sentence in question.[10]
Although a useful baseline, the foregoing, purely textual analysis does not touch on the issue that defendant brings to this court. Defendant contends that the fact that a criminal sentence has at some point been "approved by the people" does not mean that it will remain so forever: Once the legislature musters the required two-thirds majority to enact a reduction of a voter-approved sentence, the resulting sentence has been enacted by the legislature, not "approved by the people," and therefore is not subject to *419 Article I, section 33 's supermajority requirement. The same thing is true, in defendant's view, when, in a single enactment, the legislature, by a two-thirds vote, first reduces a mandatory or presumptive sentence from its voter-approved level but then, at a specified time, returns it to its previous level (as occurred here). The contrary view, which the state advocated in the trial court, is that, once enacted by the voters through the initiative or referendum process, a criminal sentence either (1) perpetually remains one that is "approved by the people" and thus subject to the supermajority requirement of Article I, section 33 ; or (2) only ceases to be one that was "approved by the people" if a legislative supermajority enacts, and specifically intends to enact, a permanent reduction of the sentence. Those arguments pose a more subtle question about the meaning of Article IV, section 33 : Under what circumstances (if at all) does a voter-enacted sentence that has **306 been amended by the legislature cease to be one that has been "approved by the people" and thus subject to that provision's two-thirds majority requirement?
One possibility is that the voters who enacted Article IV, section 33, understood that being "approved by the people" was a permanent state, so that, even if a voter-approved sentence was lawfully amended by the legislature, the resulting sentence would still be "approved by the people" and subject to Article IV, section 33 's two-thirds majority requirement-at least until "the people" affirmatively repealed it. That theory, however, is inconsistent with the legal rules pertaining to the effect of legislative amendments on existing statutes that ordinarily would apply, including the rule, which we will discuss presently, 364 Or. at ----, --- P.3d at ----, that the legislature may undo legislation enacted by the voters, and vice versa. Although the voters could have intended to override those established rules, our usual presumption is that laws are enacted, both by the legislature and "the people," in the light of the legal rules that bear directly on them. See, e.g. , Hazell v. Brown , 352 Or. 455, 465-66, 287 P.3d 1079 (2012) (in interpreting statutes enacted by both the legislature and the people, court presumes that laws are enacted in light of the judicial decisions that preceded and bear directly on them). And our review of the text, context, and history of Article IV, section 33, does not disclose any hint of a contrary intent. We can discern no basis for concluding that the voters understood that provision as disregarding those rules and establishing a permanent shield against legislative annulment.
We conclude, then, that the voters who enacted Article IV, section 33, of the Oregon Constitution, understood that a sentence that at one point had been "approved by the people" might cease to be so, depending on how the legal rules that ordinarily govern such questions applied to the legislative circumstances. Accordingly, to resolve the question of whether the 2017 legislature reduced sentences that were "approved by the people," we must consider the legal rules concerning the effect of legislative amendments as they existed when Article IV, section 33, was adopted. As it turns out, those rules have not changed in the interim.
*420 Another strand of relevant law concerns the extent to which a statutory amendment to an existing statute becomes part of the existing statute or, instead, is seen as a new enactment that displaces the existing statute. Long before Article IV, section 33 was adopted, it was well established in this court's case law that, when a section of a statute is amended in accordance with the requirement set out in Article IV, section 22, of the Oregon Constitution (i.e ., the requirement that the section amended "shall be set forth and published at full length"),[12] only the changed or additional wording is considered a new enactment. In State v. McGinnis , 56 Or. 163, 108 P. 132 (1910), for example, this court announced that,
"[w]hatever the rule may be in other jurisdictions, it is settled in this State that where a section of an act is amended 'so as to read as follows,' and the later law sets forth the changes contemplated, the parts of the old section that are **308 incorporated in the new are not to be treated as having been repealed and re-enacted, but are to be considered as portions of the original statute, unless there is a clear declaration to the contrary, in the absence of which it is only the additions that have been made to the original section that are to be regarded as a new enactment ."
But those basic rules about how an enactment by the legislature displaces an existing, voter-approved provision do not fully resolve the issue that is before us. Here, the legislature's 2009 bill contained one section, section 8, that changed the voter-approved sentences set out in ORS 137.717 and another section, section 11, that returned ORS 137.717 to its original wording-and it is unclear to which section the McGinnis rule should be applied. Before conceding the issue before this court, the state had argued to the trial court that section 11 was the proper and necessary focus. It insisted that section 8 reflected a mere suspension of the sentences that the voters had approved in Measure 57-that the legislature clearly had not intended in section 8 to repeal or amend those Measure 57 sentences, but only to phase them in. And, the state added, because the sentences provided in section 11 did not differ in any material respect from those in the Measure 57 version, and because they continued in effect after the two-year suspension contemplated by section 8 had elapsed, the McGinnis rule requires that the sentences be considered part of that earlier voter-approved (Measure 57) statute. Defendant, on the other hand, focuses on section 8, arguing that, once it replaced the 18-month presumptive sentence for first-degree **309 theft that the voters had approved in Measure 57 with a reduced, 13-month sentence, and did so by the required supermajority, the voter-approved sentence ceased to be the law and, under the rule of McGinnis , the prevailing 13-month sentence was a new enactment by the legislature. According to defendant, when the legislature then provided in section 11 that the new 13-month presumptive sentence would be replaced after two years with an 18-month presumptive sentence, that change also was a new enactment by the legislature: Although the presumptive sentence provided in section 11 matched the presumptive sentence that the voters previously had approved for first-degree theft in Measure 57, it had been enacted by the legislature, not "the people."
Boiled down to its essence, the foregoing controversy pits a debatable inference as to *421 what the legislature intended when it enacted its 2009 amendments to ORS 137.717 (that it intended to suspend the presumptive sentences the voters had approved in Measure 57 for a brief period of time, but ultimately to retain them as sentences that had been "approved by the people") against what the legislature actually did. We note, with regard to the latter point, that the specific mechanism that the legislature employed in H.B. 3508 (2009) was to amend the voter-approved version of ORS 137.717 and then, in the same bill, to amend that newly amended version to read as ORS 137.717 originally had, to become effective two years hence. According to the Oregon Legislature's Bill Drafting Manual , that "double amending" process is an acceptable way to enact a temporary change to a law, especially when "temporary changes to a permanent provision are extensive or when a separate, temporary section may cause confusion." See generally Legislative Counsel Committee, Bill Drafting Manual § 12.7(c) (17th ed. 2014).
The state's now-abandoned argument with regard to the legislature's intent concentrates on material in the preamble to the legislature's 2009 bill, H.B. 3508, and on representations made by legislators and their staff during committee hearings on the bill. The state correctly observed that the bill's preamble and legislative history are replete with evidence that the legislature intended only to temporarily reduce the voter-approved sentences set out in **310 ORS 137.717, and then, only for the ultimate purpose of "phasing in" those voter-approved sentences. The preamble describes the impetus for the bill in terms of "the State of Oregon need[ing] to phase in the implementation of * * * Measure 57 in order to achieve the goal of reducing property crime in Oregon." Or. Laws 2009, ch. 660, Preamble (emphasis added). A budget report and summary of the bill prepared for the Joint Committee on Ways and Means referred to the savings that would be realized from the "phase-in of Measure 57." Budget Report and Measure Summary, Joint Committee on Ways and Means, H.B. 3508-A, June 18, 2009, 3 (emphasis added). The staff summary of an earlier bill, H.B. 2335 (2009), which had supplied the wording for section 8 of H.B. 3508, had referred to that bill's purpose of "[p]hasing in Measure 57, not eliminating it." Staff Measure Summary, Senate Judiciary Committee, H.B. 2335-B, June 3, 2009, 1-2 (emphasis added). And various legislators spoke of the bill as "phasing in" Measure 57. See, e.g. Audio Recording, Joint Subcommittee on Public Safety, H.B. 3508, June 18, 2009, at 24:00 (statement of Sen. Vicki Walker). The state deduced from the foregoing materials that the legislature enacted the 2009 amendments to ORS 137.717 with a specific intention of "respecting both the will of the voters [as expressed in Measure 57] and the necessities of the state's budget" by suspending and then phasing in the sentences provided therein. In keeping with that intent, the state concluded, the sentences that were in place after the phase-in was completed were the very sentences that had been "approved by the people" in Measure 57.
That argument is insufficiently precise about what legislators and their staff meant when they spoke of "phasing in" Measure 57. While the cited material might support a legislative intent to "phase in" sentences that were as long as the ones that the voters had approved in Measure 57, they do not support an intent to restore the sentences to their former status as sentences that were approved by the people and thus subject to the two-thirds majority requirement of Measure 57. And in any event, as a factual matter, the sentences set out in section 11 of the legislature's 2009 bill are not the sentences that the people adopted in Measure 57; they are sentences that the legislature adopted.
**311 Although the sentences that the legislature adopted are the same length as the sentences that the people adopted, and they account for prior convictions in the same way, it was the legislature and not the people who put them in place. And, when the legislature enacted the 2009 bill, including both sections 8 and 11, it did so by the required two-thirds majority.
Under the ordinary rules that determine the effects of legislative amendments on existing statutes (which, we have concluded, the voters who adopted Article IV, section 33, intended to apply), the sentences that the legislature included in the 2009 amendments *422 to ORS 137.717 were newly enacted by a two-thirds majority of the legislature and were not a part of Measure 57, a measure that the people had approved in 2008. It follows that Article IV, section 33, does not apply to the resulting sentences, and that the legislature could validly reduce them by a simple majority in both houses-and did so when it enacted H.B. 3078 (2017). The trial court erred in concluding otherwise.
The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for resentencing.
Kistler, J., retired December 31, 2018, and did not participate in the decision of this case.
Article IV, section 33, of the Oregon Constitution was adopted through the initiative process in 1994, as Ballot Measure 10. It provides:
"Notwithstanding the provisions of section 25 of this Article [which requires a 'majority of all members elected to each house' to pass a bill in the legislature], a two-thirds vote of all members elected to each house shall be necessary to pass a bill that reduces a criminal sentence approved by the people under section 1 of this Article [which authorizes 'the people' to legislate through the initiative process]."
Defendant had four prior convictions of the relevant kind-three for theft in the second degree, ORS 164.045, and one for unauthorized use of a vehicle, ORS 164.135.
ORS 19.405 provides that, when the Court of Appeals has jurisdiction over an appeal, it may certify the appeal to the Supreme Court in lieu of deciding the appeal itself. S.B. 1543 (Oregon Laws 2018, ch. 120, § 14) confers jurisdiction on the Supreme Court, in certain types of appeals, to determine whether H.B. 3078 (2017) violates the Oregon Constitution. It further provides that the court's disposition of such appeals should be expedited.
If the state had lost below, then its concession might result in a lack of adversity and a concern that any opinion this court produced in the matter would be advisory. But it was defendant who lost below and who now appeals. Even if the state, defendant's putative opponent, now concedes that the trial court's decision is in error, defendant's hostility toward the trial court's decision lends sufficient adversity to the case.
We thus consider arguments raised by plaintiffs in Foote v. State of Oregon (S065883), which was consolidated with the present case for purposes of oral argument.
Of particular relevance to the present case, Ballot Measure 57 amended ORS 137.717 to provide:
"(1) When a court sentences a person convicted of:
"(b) Theft in the first degree under ORS 164.055 * * * *, the presumptive sentence is 18 months of incarceration * * * if the person has:
"(B) Two or more previous convictions for any combination of the crimes listed in subsection (2) of this section; or
"(2) The crimes to which subsection (1) of this section applies are:
"(a) Theft in the second degree under ORS 164.045 ;
"(d) Unauthorized use of a vehicle under ORS 164.135 ;"
"(3)(a) A presumptive sentence described in subsection (1) of this section shall be increased by two months for each previous conviction the person has that:
"(A) Was for any of the crimes listed in subsection (1) or (2) of this section; and
"(B) Was not used as a predicate for the presumptive sentence under subsection (1) of this section."
As relevant to defendant, section 8 thus provided (using the usual convention of setting out new material in bold and omitted material in bracketed italics):
"ORS 137.717, as amended by [Ballot Measure 57] is amended to read:
"137.717(1) When a court sentences a person convicted of
"(b) Theft in the first degree under ORS 164.055 * * ** * the presumptive sentence is [18 ] 13 months of incarceration, unless the rules of the Oregon Criminal Justice Commission prescribe a longer presumptive sentence, if the person has:
(B) [Two ] Four or more previous convictions for any combination of the listed in subsection (2) of this section[.]
"[ (3)(a) A presumptive sentence described in subsection (1) of this section shall be increased by two months for each previous conviction the person has that :]
"[ (A) Was for any of the crimes listed in subsection (1) or (2) of this section; and ]
"[ (B) Was not used as a predicate for the presumptive sentence under subsection (1) of this section.]"
As relevant to defendant, section 11 provided: "ORS 137.717, as amended by [Ballot Measure 57], and section 8 of this 2009 Act, is amended to read:
"(b) Theft in the first degree under ORS 164.055 * * * *, the presumptive sentence is [13 ] 18 months of incarceration, unless the rules of the Oregon Criminal Justice Commission prescribe a longer presumptive sentence, if the person has:
"(B) [Four ] Two or more previous convictions for any combination of the crimes listed in subsection (2) of this section.
"(3)(a) A presumptive sentence described in subsection (1) of this section shall be increased by two months for each previous conviction the person has that:
"(A) Was for any of the crimes listed in subsection (1) or (2) of this section; and
"(B) Was not used as a predicate for the presumptive sentence under subsection (1) of this section. "
Article IV, section 1(1) provides that "[t]he legislative power of the state, except for the initiative and referendum powers reserved to the people , is vested in the Legislative Assembly." Section 1(2) sets out the people's power to propose and then "enact or reject" legislation independently of the Legislative Assembly, and section 1(3) sets out the people's power to "approve or reject" any "Act of the Legislative Assembly" that is referred to them through a referendum petition or order of the Legislative Assembly.
This court has long recognized that, since Article IV of the Oregon Constitution was amended in 1902, Oregon has had a dual system of legislation and "two law-making bodies, the legislative assembly on the one hand and the people on the other, which in the exercise of legislative powers are coequal and co-ordinate." State ex rel. Carson v. Kozer , 126 Or. 641, 644, 270 P. 513 (1928).
Thus, to lawfully repeal or amend a criminal sentence that had been approved by the people, the legislature would have to comply with the two-thirds majority requirement in Measure 57.
Article IV, section 22, of the Oregon Constitution provides in part: "No act shall ever be revised or amended by mere reference to its title, but the act revised, or section amended shall be set forth, and published at full length."